JIM MARLER *v.* THE STATE.

*(Nashville.* December Term, 1920.)

LARCENY. Evidence held sufficient to sustain a conviction.

In view of Shannon's Code, section 6545, providing that, if a contract or loan for use or other bailment or agency be used merely as a means of procuring possession of property with intent to fraudulently appropriate it, it is "larceny," evidence *held* sufficient to show defendant guilty of larceny as having fraudulently obtained money from prosecuting witness for the purchase of. liquor for their joint benefit, with intent to appropriate the money

Case cited and approved: Felton v. State, 17 Tenn., 397.

Case cited and distinguished: Mitchell v. State, 92 Tenn., 668.

Code cited and construed: Sec. 6545 (S.).

FROM DAVIDSON.

Error to the Criminal Court of Davidson County.—HON. J. D. B. DEBOW, Judge.

A. B. ANDERSON, for plaintiff in error.

WM. H. SWIGGART, JR., for the State.

MR. JUSTICE HALL delivered the opinion of the Court.

The plaintiff in error, Jim Marler, has appealed to this court from a conviction for grand larceny.

He seeks a reversal upon the following grounds:

(1). Because the evidence preponderates against the verdict of guilty and in favor of his innocence.

Marler v. State.

(2)   That there is a fatal variance in the proof and the charge laid in the indictment, in that the indictment charges him with larceny, while the proof shows that if he is guilty of any offense he is guilty of a fraudulent breach of trust, or of obtaining property by false pretense.

The evidence shows that the plaintiff in error obtained from the prosecutor, T. H. Broyles, the sum of $500, which he converted to his own use, in the following manner:  He had known the prosecutor for some years, and called on the prosecutor at his barber shop on Ninth avenue, in the city of Nashville, Davidson county, Tenn., and told the prosecutor that he knew how some money could be made. He stated that he knew a woman (stating her name), who lived on a lane just off of the Murfreesboro Pike near the city of Nashville, who had a lot of Jack Daniel whisky, which could be purchased, and which he already had sold for $1,500, provided he could secure the money with which to purchase the whisky from the woman.  He told the prosecutor that this would require $750, and that he had $250 of the amount required.  He asked the prosecutor if he had $500, assuring him that if he would furnish him this amount of money he (plaintiff in error) would buy the whisky and would sell it for $1,500, and they would divide the profits.  He further told the prosecutor that he knew the woman in question, and she would not sell whisky to any one but him.  The prosecutor did not have the $500, but secured the same by mortgaging his barber shop, and on the night of February 10, 1920, plaintiff in error engaged a taxicab, and he and the prosecutor drove out on the Murfreesboro Pike some distance beyond the city

limits to the lane where the woman, from whom plaintiff in error was to purchase the whisky was supposed to live. There plaintiff in error had the car stopped. He then asked the prosecutor for the $500. At first the prosecutor refused to deliver the money to the plaintiff in error, stating that he would go with the plaintiff in error to the woman's house, and would deliver to him the $500 when he secured the whisky. To this suggestion the plaintiff in error demurred, stating to the prosecutor that he could not accompany him to the woman's house, as she did not want any one to come with him. Thereupon the prosecutor delivered to the plaintiff in error the $500 to be used in purchasing the whisky. It was agreed between the prosecutor and the plaintiff in error that the former and the chauffeur driving the car should wait at the point where the car was stopped until the plaintiff in error returned with the whisky, the plaintiff in error stating that he would only be gone a few minutes. The plaintiff in error never returned, and after waiting more than an hour for his return, the prosecutor and the chauffeur proceeded down the lane or road in the direction which the plaintiff in error had gone in search of him; but being unable to find him, and after making inquiries in the neighborhood and ascertaining that no woman of the name which had been given the prosecutor by the plaintiff in error lived on said lane, or in that neighborhood, they returned to the city. The prosecutor never recovered his money.

The plaintiff in error admits that he received the $500 from the prosecutor to be used in purchasing the whisky, and he says that he did purchase it from the woman liv-

ing on the lane, and after doing so he started back to the taxicab with the whisky, when he was intercepted by some unknown man who forcibly took the whisky from him. Thereupon, he says, he called a taxicab by telephone and returned to the city; that upon reaching the city he began to drink, becoming drunk, and stayed on a drunk for two or three days before he came to his "senses." He says that the prosecutor loaned him the $500 with which to buy the whisky, and that he intended to repay the same to the prosecutor. He admits, however, that he had not made any effort to do so, and had never said anything to the prosecutor about paying him back the money, though some nine months had elapsed between the date of the transaction and the date upon which he was put upon his trial in the criminal court of Davidson county.

John H. Lechleiter, the attorney for the prosecutor, testified that he talked with the plaintiff in error several times and endeavored to get him to pay the prosecutor his money back. This the plaintiff in error admits. Mr. Lechleiter testified that plaintiff in error stated to him that nothing could be done with him for obtaining the prosecutor's money in the way that he did, because the transaction was an illegal one, and that he knew of other cases where the parties were unable to get their money back. Mr. Lechleiter says that the plaintiff in error asked him what he thought about the probability of convicting him for securing the prosecutor's money, and that the plaintiff in error stated to him that he had spent the money; that he got on a "big" drunk at the Dreamland

Dance Hall, and did not know just what had become of the money.

The plaintiff in error denied making the statements testified to by Mr. Lechleiter.

We think the evidence makes out the crime of "larceny" under section 6545 of Shannon's Annotated Code, which is in words as follows:

"If a contract of loan for use, or of letting and hiring or other bailment or agency, be used merely as the means of procuring possession of property with an intent to make a fraudulent appropriation at the time, it is larceny."

We think the weight of the evidence shows that the prosecutor turned the money over to the plaintiff in error under an agreement that the plaintiff in error was to use it in purchasing whisky for their joint benefit, and for no other purpose did the prosecutor turn the $500 over to him. The plaintiff in error suggested the contract to the prosecutor, and entered into it merely as a means of obtaining possession of the prosecutor's money, intending at the time to make a fraudulent appropriation of it, and did appropriate it to his own use. We think in doing this he became guilty of larceny under the statute just quoted, and the authority of *Mitchell* v. *State*, 92 Tenn., 668, 23 S. W., 68. In that case this court said:

"That statute (section 6545) seems to have originated with the Code of 1858, and was, no doubt, intended, primarily, to change the rule announced in *Felton* v. *State*, 9 Yer., 397, and other cases therein cited, to the effect that there can be no larceny in the absence of a technical trespass, though the party charged be shown to have obtained

Marler v. State.

possession of the property by fraud upon the owner, and with a felonious intent of converting it to his own use."

We are of the opinion that the conviction was proper, and the judgment is affirmed.